STATE EX REL. SECOND WARD SAVINGS BANK, Respondent,
vs. LEUCH, City Clerk, Appellant.

*December 13, 1913—January 13, 1914.*

*Taxation: Assessment of bank stock: Board of review: Certiorari:
Bank may maintain: Deduction of value of realty: Branch of-
fices: Rebuilding of banking house.*

1. In view of the option given by sec. 1057b, Stats. 1911, to a bank
   to pay the taxes on all shares of its stock and charge the sum
   paid to expenses, any illegal and substantial increase of taxes
   which tends to prevent the bank from making its shares at-
   tractive in that manner is a special and direct injury to the
   interests of the bank itself, which qualifies it to maintain an
   action of *certiorari* to test the validity of the assessment.
2. Whether sec. 1061, Stats. 1911, applies to the assessment of bank
   stock at all is *doubted.* If it is applicable, its requirements
   are substantially complied with by the appearance and exami-
   nation of the bank officers, the bank being considered the
   agent of the stockholders so far as the assessment is con-
   cerned.
3. Construing it fairly and reasonably according to the manifest
   intent to avoid double taxation, the provision in sec. 1057,
   Stats. 1911, that if "the building in which" a "bank maintains
   its offices and transacts its business be owned by such bank,
   the assessed value thereof, including the land on which it is
   located, if owned by such bank, shall be deducted from the
   total value of" the shares of stock, includes the branch offices
   of the bank as well as its main banking house.
4. Although a bank is rebuilding its main banking house and is
   temporarily occupying rented quarters, it nevertheless "main-
   tains its offices and transacts its business" in the main bank-
   ing house, within the meaning of the statute.

APPEAL from a judgment of the circuit court for Milwau-
kee county: J. C. LUDWIG, Circuit Judge. *Affirmed.*

*Certiorari* to reverse the action of the board of review of
the city of Milwaukee in the year 1912 in assessing the
shares of capital stock of the respondent bank. Said bank
is incorporated under the laws of the state and has 10,000
shares of stock with a par value of $100 each. It appeared

that the bank has one main banking house and two branch offices for the receiving of deposits in Milwaukee, and owns the real estate on which they stand.   In 1912 the bank was rebuilding its main banking house (which it had occupied for some years) and was temporarily occupying rented quarters while the rebuilding was going on.   The assessor assessed the value of the bank stock at $150 per share, but refused to deduct from the gross sum the assessed valuation of the real estate on which the main banking house and the branch offices are situated.   The respondent bank appeared before the board of review and objected to the assessment of the bank stock on the ground that the gross value of the said lands and buildings should have been deducted therefrom. The board of review refused to make any deduction, but affirmed the assessment made by the assessor, whereupon the bank brought this action.   The circuit court reversed the action of the board and held that the value of the lands and buildings should be deducted from the gross value of the stock, and from that judgment this appeal is taken.

For the appellant there was a brief by *Daniel W. Hoan,* city attorney, and *Garfield S. Canright,* assistant city attorney, and oral argument by *Mr. Canright.*

For the respondent there was a brief by *Rollin B. Mallory* and *Edward W. Spencer,* attorneys, and a separate brief by *Russell Jackson,* of counsel, and oral argument by *Mr. Mallory* and *Mr. Jackson.*

WINSLOW, C. J.   Two preliminary objections are urged which will be briefly considered.   It is said (1) that the bank cannot maintain this action because of lack of substantial interest in the controversy, and (2) that the assessment cannot be questioned because the stockholders of the bank did not appear before the board and submit themselves to examination.   We regard these objections as not well taken.

It is true that the assessment of bank stock is made

against the shareholders, but such assessments are required to be entered on the assessment roll of the district where the bank is located and separately from the assessment of other personal property assessable to the owners. Sec. 1042, Stats. 1911. This fact alone would cut little figure on the question, but when it is taken in connection with the provisions of secs. 1057a and 1057b, Stats. 1911, there seems considerable significance in it. The separation in assessment is evidently made for the purpose of making it possible for a bank to handle and pay all the taxes on its stock at one payment and charge the payment up to the general expense account, or at its option make the proper charge on its books against each stockholder for the amount paid on behalf of that stockholder. Sec. 1057a provides that the taxes levied shall be a lien upon the shares on which they are levied, which may be enforced by levy on the stock and sale thereof by the officer in the same manner in which corporate stock is levied upon and sold under an execution. Sec. 1057b provides that the bank itself is authorized to pay the taxes and have a lien on the shares for the amount paid, as well as for costs and expenses incurred, or may at its option pay the taxes for all stockholders in such bank out of its earnings or other available resources as the expenses of such bank corporation.

It does not appear in the present case whether the bank proposes to exercise the option given to it in the section last cited, although the inference would seem to be strong that it does; but however this may be, it has the undoubted right to do so, and in view of that legal right the question whether the bank suffers any special and direct injury by an illegal increase of taxation upon its shares of stock is to be considered. It is clear that in one sense any substantial increase of taxation on the shares of an incorporated bank is an injury to the corporation itself as well as to the separate interests of the stockholders. Every corporation is directly interested

in the value of its shares of stock, and anything which tends to reduce that value is inimical to the interests of the corporation.    In addition to this general injury, we have in the present case the fact that the bank has the option to pay all the taxes and charge the sum paid to expenses.    The fact that the bank has this right and exercises it unquestionably operates to make its shares more attractive in the market, and any illegal and substantial increase of taxes which tends to prevent the bank from making its shares attractive in this manner must, we think, be considered a special and direct injury to the interests of the bank itself, which qualifies it to maintain this action.    *State ex rel. Milwaukee Med. College v. Chittenden,* 127 Wis. 468, at page 497 (107 N. W. 500).

The considerations just stated go far to answer the second objection.    If the bank be directly interested in the action of the board, it would follow logically, if not necessarily, that in the absence of some express statute to the contrary it ought to have the right to review that action on *certiorari.* But it is said that the provisions of sec. 1061, Stats. 1911, prevent any review of the board's action in the present case. This section, after providing for the review of the assessor's roll by the board of review and for the appearance before the board of any person dissatisfied with the assessor's valuation, provides in substance that no person shall in any action be allowed to question the valuation of personal property assessed to him unless in person or by agent he shall have first presented his objections before the board and presented evidence in support thereof, and made full disclosure under oath of all his personal property liable to assessment in the district. The claim is that, as the stockholders have not appeared before the board, the assessment is not now open to question. A sufficient answer to this contention is that the bank must logically be considered as the agent of the stockholder so far as the assessment of bank stock is concerned, and that the officers of the bank appeared and submitted themselves to examination.

It may well be doubted whether this section applies to the assessment of bank stock at all, because that assessment must be made at the home of the bank, which is often at great distance from the home of the stockholder, and it would be manifestly very burdensome, if not unreasonable, to require such a stockholder to travel to the assessment district where the bank is located and there submit to examination. If, however, it be conceded that the section applies to assessments of bank stock, we think its requirements have been substantially complied with by the appearance and examination of the bank officers.

As to the merits of the controversy, we think that the judgment of the trial court was clearly right. Sec. 1057, Stats. 1911, provides that "If the building in which such bank maintains its offices and transacts its business be owned by such bank, the assessed value thereof, including the land on which it is located, if owned by such bank, shall be deducted from the total value of such shares." Sec. 1057c provides that the taxation of the shares of stock shall be in lieu of all taxes upon "the capital, surplus, property and assets . . . except that no real estate owned by any bank . . . or constituting the whole or any part of its capital, surplus or assets shall be exempt from taxation."

The object of the provision in sec. 1057 providing for the deduction of the value of the bank's banking house and site, if owned by it, from the gross valuation of the shares of stock is not to exempt the real estate from taxation, but simply to avoid double taxation. The banking house and site is taxed as real estate, but it is a part of the assets of the bank and so enhances to that extent the value of the bank stock, and thus would be taxed again in the taxation of the stock if it were not for this provision. Such a statute calls for fair and just rather than restricted construction. While the statute refers to "the building," it is very plain that the idea was that the real estate which the bank owned and was utilizing to carry on its business was not to

be taxed twice. Doubtless the contingency that the bank might have a main banking house and a branch office had not occurred to the persons who drafted the statute, but the bank as truly "maintains its office and transacts its business" at the branch office as at the main banking house, if it may legally maintain a branch office; and it cannot be claimed that it may not do so in view of the fact that the branch office was existing at the time of the passage of ch. 135, Laws of 1909. We reach the conclusion that under a fair and just construction of the law in view of the object to be accomplished, the branch office is included within the clause in question as fully as the main banking house.

The same considerations are practically decisive upon the second contention made by the appellant, namely, the contention that because the bank was rebuilding its main banking house and temporarily occupying rented quarters during the work of rebuilding it did not maintain its office and transact its business there within the meaning of the statute. The mere temporary interruption in the active use of the building for banking purposes, caused by the making of necessary repairs or enlargements to meet the demands of the business, should not in reason be held to make any difference in its legal status under the statute in question. A homestead remains a homestead notwithstanding a removal therefrom by the owner if the removal be for a temporary purpose merely, with intention to re-occupy. *Bartle v. Bartle,* 132 Wis. 392, 112 N. W. 471. The situation here is quite analogous. Other analogous situations might be referred to, but it does not seem necessary. Construing the law fairly and reasonably according to its manifest intent, we find no difficulty in concluding that the value of the main banking house and the land on which it stands should have been deducted from the gross valuation of the shares of stock.

*By the Court.*—Judgment affirmed.