VAN DYKE, Respondent, vs. CITY OF MILWAUKEE, Appellant.

*March 20—April 9, 1914.*
*December 12, 1914—January 12, 1915.*

*Taxation: Income tax: What is "income:" Dividends from mining cor-*
*poration: Deductions allowable: Depreciation of mining stock:*
*Premiums paid on bonds: Personal property taxes: Offset: Stat-*
*utes: Construction.*

1. The word "income" in the constitutional amendment authorizing
   the levying of an income tax and in the statute enacted in pur-
   suance thereof is used in its common, ordinary meaning and not
   in its strict, technical, or true economic sense; and it includes
   ordinary dividends paid by going corporations, mining corpora-
   tions as well as others.

2. For purposes of income taxation such ordinary dividends will be
   conclusively presumed, as against stockholders, to be from earn-
   ings or profits.

3. A stockholder cannot be permitted, under sub. (a), (b), sec.
   1087m—4, Stats. 1911, to deduct from the dividends paid by a
   mining company, under the guise of "losses," the depreciation
   in the value of his stock caused by such distribution of dividends.

4. Dividends declared and distributed during 1911 out of surplus on
   hand prior to January 1, 1911, when the Income Tax Law went
   into effect, are taxable as income of the year 1911, since the prof-
   its of a corporation become income to stockholders when dis-
   tributed as dividends and not before.

5. When only part of the income of a corporation is taxed in this
   state, a stockholder should be allowed, under sub. (c), sec.
   1087m—4, Stats. 1911, a proportionate and not a total deduction
   of dividends, in computing the amount of his taxable income.

6. The fact that a corporation disposed of its mining properties in
   exchange for stock in another corporation would not affect the
   taxable character of the dividends declared by it, after such ex-
   change, out of surplus moneys or profits on hand.

7. The fact that a person purchased bonds at a premium does not
   entitle him to deduct annually from the interest received a *pro*
   *rata* share of such premium in order that the capital may be
   kept unimpaired and that it may not be taxed as income.

8. Under sec. 1087m—26, Stats. 1911, one who paid a tax on his per-
   sonal property for the year 1911 was entitled to have the amount
   so paid deducted from the tax on his income for that year.   WINS-
   LOW, C. J., and SIEBECKER, J., dissent.

9. When a statute, giving its language its ordinary and natural meaning, expresses a result neither absurd nor harsh, but on the contrary one in harmony with the general scheme of the law, namely, that an income tax shall, substantially, become a substitute for a personal property tax, then such natural and ordinary meaning should be given to the language used, and there is no room for construction.

10. A practically contemporaneous construction by an administrative department cannot be successfully invoked to override a plain meaning of the statute.

BARNES, J., dissents.

APPEAL from an order of the circuit court for Milwaukee county: J. C. LUDWIG, Circuit Judge. *Affirmed.*

Action to recover part of an income tax paid by plaintiff under protest to the defendant, the city of *Milwaukee,* upon income for the year 1911. The defendant demurred to plaintiff's amended complaint and appealed from an order overruling its demurrer.

For the appellant there was a brief by *Daniel W. Hoan,* city attorney, and *Garfield S. Canright,* assistant city attorney, and oral argument by *Mr. Canright.* They argued, among other things, that dividends from mining stocks are "income" within the intent of the law. *Stratton's Independence v. Howbert,* 231 U. S. 399, 34 Sup. Ct. 136, 140; Seligman, Income Tax, 19; *Central Nat. Bank v. U. S.* 137 U. S. 355, 11 Sup. Ct. 126; *Comm. v. P., Ft. W. & C. R. Co.* 74 Pa. St. 83; *Hyatt v. Allen,* 56 N. Y. 553; *Matson's Ford B. Co. v. Comm.* 117 Pa. St. 265, 11 Atl. 813. Such dividends are assessable as of the year received, the stockholders having no property in them until declared. *Gibbons v. Mahon,* 136 U. S. 549, 10 Sup. Ct. 1057; *Hyatt v. Allen,* 56 N. Y. 553. Where a corporation pays a tax on only a part of its income the deduction to the stockholder should be limited to such proportion at least. *Sturges v. Carter,* 114 U. S. 511, 5 Sup. Ct. 1014; *State ex rel. M., St. P. & S. S. M. R. Co. v. Railroad Comm.* 137 Wis. 80, 117 N. W. 846; *State ex rel. Second Ward Sav. Bank v. Leuch,* 155 Wis. 493, 144 N. W.

1119. Premiums paid for bonds cannot be amortized. *Gillatt v. Colquhoun,* 33 W. R. 258. The income tax was intended as a substitute for the personal property tax, which had proven a failure, and the property tax paid in any year was only to be offset against income tax *due* in that year, not that assessed upon income of the year in which the tax was paid. *Income Tax Cases,* 148 Wis. 456, 134 N. W. 673, 135 N. W. 164.

*Geo. D. Van Dyke,* respondent, *in pro. per.,* contended, *inter alia,* that a mine is a capital asset, and sales of ore therefrom are not income and cannot be subjected to a graduated and progressive income tax. *Gray v. Darlington,* 15 Wall. 63; *U. S. v. Nipissing M. Co.* 202 Fed. 803; *Income Tax Cases,* 148 Wis. 456, 134 N. W. 673, 135 N. W. 164; *Estate of Wells,* 156 Wis. 294, 144 N. W. 174; *Miller v. Payne,* 150 Wis. 354, 136 N. W. 811; *Soehnlein v. Soehnlein,* 146 Wis. 330, 131 N. W. 739; Howes, Income & Principal, 1, 2, 4, 17, 34; *Mercer v. Buchanan,* 132 Fed. 508; McCullough, Prin. of Pol. Econ. 530; Seligman, Income Tax, 19; 50 Albany Law Jour. 300; *Waring v. Savannah,* 60 Ga. 93; *Levi v. Louisville,* 97 Ky. 394, 30 S. W. 973; *Mundy v. Van Hoose,* 104 Ga. 292, 30 S. E. 783; Black, Income Taxes, secs. 32, 34, 45; *Stevens v. Hudson's Bay Co.* 25 Times Law Rep. 709; *Tebrau R. Syndicate v. Farmer,* 47 Scot. Law Rep. 816; *Iowa State Sav. Bank v. Burlington,* 98 Iowa, 737, 61 N. W. 851; *Spooner v. Phillips,* 62 Conn. 262, 24 Atl. 524; *Merchants' Ins. Co. v. McCartney,* 1 Low. Dec. 447; *Sargent L. Co. v. Von Baumbach,* 207 Fed. 423; *Gowan v. Christie,* L. R. 2 H. L. 273, 284; *Duff's Appeal,* 10 Sad. (Pa.) 483, 14 Atl. 364; *Blakley v. Marshall,* 174 Pa. St. 425, 34 Atl. 564; *Williamson v. Jones,* 43 W. Va. 562, 27 S. E. 411, 38 L. R. A. 694; *Coltness I. Co. v. Black,* L. R. 6 App. Cas. 315; MacSwinney, Mines, 555; *Alianza Co. v. Bell,* [1904] 2 K. B. 666; Jarvis, Income Tax, 53; *Wells v. Green Bay & M. C. Co.* 90 Wis. 442, 64 N. W. 69; *People ex rel. United Verde*

*C. Co. v. Roberts,* 156 N. Y. 585, 590, 51 N. E. 293; *Excelsior W. & M. Co. v. Pierce,* 90 Cal. 131, 27 Pac. 44. Upon other points involved he cited *Richardson v. St. Albans,* 72 Vt. 1, 47 Atl. 100; *Comm. v. Cent. T. Co.* 145 Pa. St. 89, 22 Atl. 209; *Allis's Estate,* 123 Wis. 223, 101 N. W. 365; Black, Income Taxes, sec. 103; Howes, Income & Principal, 13–16; *Curtis v. Osborn,* 79 Conn. 555, 65 Atl. 968; Banking Law Jour. May, 1909; *New York L. I. & T. Co. v. Baker,* 165 N. Y. 484, 59 N. E. 257; *In re Hoyt,* 27 App. Div. 285, 50 N. Y. Supp. 623; *Hemenway v. Hemenway,* 134 Mass. 446; *First Nat. Bank v. Douglas Co.* 124 Wis. 15, 102 N. W. 315.

The following opinion was filed April 9, 1914:

VINJE, J. The demurrer to the complaint raises a number of important questions relative to the construction of our Income Tax Law. Some of these questions, it is deemed, can be briefly, yet adequately, stated in abstract form.

1. In the case of a going corporation engaged exclusively in mining and marketing ore from its property, are ordinary dividends declared by its directors taxable as income without reference to how much of them is derived from capital and how much from profit in the strict sense of those terms? In the present case the complaint alleges that if the reasonable value of the ore in the mine, together with the cost of mining and marketing, is deducted from the amount received for the ore, there remains no profit or income from the business of the corporation, hence it is claimed the corporation is distributing only its capital among its stockholders in the form of dividends.

The subject of what constitutes income in the technical or true economic sense of the word is an interesting one, and also one upon which few economists and courts agree. Fortunately we are not called upon to enter that wide and somewhat vague field in the present inquiry. The word "income,"

as used in the constitutional amendment and in the statute enacted in pursuance thereof, must be held to have been used in its common, ordinary meaning, and not in its strict, technical, or true economic sense. For it is a familiar rule of construction that ordinary words used in constitutions and statutes must be given their usual and common significance if such meaning harmonizes with the evident intent of the language employed and with the purpose to be accomplished. Ordinary dividends declared by going corporations, including mining corporations, are and always have, in the common acceptation of the term, been regarded as income, spoken of and understood to be such by people generally. It was therefore competent for the legislature to declare as income all dividends or profits derived from stock or from the purchase and sale of any property or other valuables acquired within three years previous.

To give the term "income" its technical meaning would not only violate the evident intent of the constitutional amendment and of the legislature, but it would practically render the Income Tax Act impossible of administration. The task of tracing dividends declared by all sorts of corporations to their source to determine how much came from capital and how much from income, strictly speaking, or how much from an enhancement of capital value, would be colossal in the amount of labor required, perplexing in character, and productive of almost endless litigation. No such construction should be given it unless absolutely demanded by the language of the act. On the contrary, its language requires that the word "income" be given its general and usual meaning. It follows that ordinary dividends declared by a going corporation, including mining corporations, will be conclusively presumed as against stockholders to be from earnings or profits for purposes of income taxation. Howes, Income & Principal, 18; Black, Income Taxes, sec. 41; *Comm. v. Ocean Oil Co.* 59 Pa. St. 61. This does not debar corporations from

declaring dividends in cancellation of stock liability where they are in fact distributing capital. Whether such dividends are taxable need not now be decided. The dividends received by plaintiff from the Pewabic Company, which was engaged in mining and marketing iron ore, were properly taxed as income.

2. If dividends are taxable as income, can the stockholder, under sec. 1087m—4, sub. (a), (b), deduct therefrom the depreciation in the value of the stock caused by such distribution of dividends? Sub. (a) refers to the cost of carrying on the business from which the income is derived, and that is clearly not applicable. Sub. (b) provides for a deduction of losses during the year not compensated for by insurance or otherwise. In the first place, the distribution of dividends is not a loss within the meaning of the statute. In the second place, the book value of stock equals the value of the capital of the corporation plus the value of its undistributed surplus or profits. The depreciation in the book value of its stock is therefore in direct proportion to the distribution of surplus, and if that were allowed to be deducted there would be no income, for the book value of each share of stock before distribution exceeds its book value after distribution exactly by the amount distributed to it. No deductions can therefore be made.

3. Are dividends declared and distributed during 1911 by a going mining corporation out of surplus on hand prior to January 1, 1911, when the Income Tax Law went into effect, taxable as income for 1911? An affirmative answer must be given to this question, because the statute (sec. 1087m—1) provides that "there shall be assessed, levied, collected and paid a tax upon incomes received during the year ending December 31, 1911." The plaintiff received this income during 1911. It was immaterial when it was earned by the corporation. As a stockholder he acquired no right to it until it was distributed in the form of a dividend. The profits of a

corporation become income to stockholders when distributed as dividends, but not before. *Miller v. Payne,* 150 Wis. 354, 136 N. W. 811; *Will of Pabst,* 146 Wis. 330, 131 N. W. 739; *Gibbons v. Mahon,* 136 U. S. 549, 10 Sup. Ct. 1057; *Hyatt v. Allen,* 56 N. Y. 553; *Minot v. Paine,* 99 Mass. 101.

4. The total net income of the Pewabic Company for 1911 was $109,332. Its total net income in Wisconsin was $7,853 or 7.184 per cent. of its entire net income. Plaintiff was allowed a deduction on his dividends of 7.184 per cent. This was correct. Sec. 1087m—4, sub. (c), must be construed as meaning a proportionate and not a total deduction of dividends when only a part of the income of a corporation is assessed in this state. Such must be held to be the legislative intent in order to do equity and avoid double taxation or no taxation. *State ex rel. M., St. P. & S. S. M. R. Co. v. Railroad Comm.* 137 Wis. 80, 85, 117 N. W. 846; *Second Ward Sav. Bank v. Leuch,* 155 Wis. 493, 144 N. W. 1119. That this is the correct construction is made clear by the amendment of 1913, which expressly so provides.

5. The dividends received from the Calumet & Arizona Mining Company were taxable for the same reason as were the Pewabic dividends. So were also the dividends received from the Superior & Pittsburg Copper Company. The fact that the latter company had distributed its stock in exchange for stock in the Calumet & Arizona Mining Company did not affect the character of the dividends declared by it after the exchange had taken place. The capital of the corporation passed by the exchange of stock, the surplus moneys or profits on hand were distributed in the form of dividends and taxable as such.

6. Prior to 1911 plaintiff purchased certain bonds for which he paid a premium and on which bonds he received interest during 1911. The right is claimed to annually deduct from the interest received a *pro rata* share of such pre-

miums in order that capital may be kept unimpaired and that it be not taxed as income. Here again we meet the question of the technical and common meaning of "income." The statute provides that the term "income" shall include "all interest derived from money loaned or invested in notes, mortgages, bonds or other evidence of debt of any kind whatsoever." Sec. 1087m—2, sub. 2, (b). It takes no account of the profits of the investment, and contemplates no deduction from the amount of interest received based upon the purchase price of the security bought. It is a matter of common knowledge that stocks and bonds are constantly bought both above and below par. To make the deduction claimed either by way of amortization of premiums or by way of deduction under sec. 1087m—4, sub. (b), as a "loss actually sustained within the year and not compensated by insurance or otherwise," or under sec. 1087m—4, sub. (a), as a depreciation of the property from which the income is derived, would require the taxing officers to deal with the constantly fluctuating values of stocks, bonds, and other securities and determine such values from time to time. *Non constat* that plaintiff may not sell his bonds at a greater premium than he paid before they mature. If deductions were made when bought above par, additions should be made when purchased below par. Such a rule would be as burdensome in the administration of the law as tracing dividends to their source and was plainly not contemplated by the statute, which declares that all interest on bonds should be income.

7. For the year 1911 plaintiff paid a personal property tax of $3,292.26 and for the year 1912 he paid a personal property tax of $734.98. His income tax on his income for the year 1911 was $6,051.16. Against this he claimed the right to offset his personal property tax of $3,292.26 for the year 1911. This he was not allowed to do, but his personal property tax of $734.98 for the year 1912 was offset against his

income tax for the year 1911. In refusing to offset plaint-iff's personal property tax for 1911 against his income tax for that year the taxing officers erred. The statute provides:

"Any person who shall have paid a tax on his personal property during any year shall be permitted to present the receipt therefor to, and have the same accepted by, the tax collector to its full amount in payment of taxes due upon the income of such person during said year." Sec. 1087m—26.

Plaintiff's personal property tax of $3,292.26 was a tax on his personal property for and during the year 1911. His income tax of $6,051.16 was a tax on his income for 1911. The former tax may be offset against the latter. The payment of a personal property tax "during any year" is a payment of the tax for the year which the property is assessed, and payment due upon income *"during said year"* means the income tax for the same year. It is the year for which the taxes accrue and not the time of payment that is specified in the statute. Any other construction, were there room for construction, would lead to double taxation on much personal property for the year 1911. Both an income tax and a personal property tax would have to be paid on it. This the legislature provided against by allowing the latter to be offset against the former for that year as well as for subsequent years.

*By the Court.*—Order affirmed, and cause remanded for further proceedings in accordance with this opinion.

Barnes, J., dissents.

The appellant moved for a rehearing. In addition to briefs for the respective parties, a statement in support of the motion was submitted by the Wisconsin Tax Commission. The motion was granted October 6, 1914, and the cause was reargued on December 12, 1914.

For the appellant there was a brief by *Daniel W. Hoan,*

city attorney, and *Max Schoetz, Jr.,* assistant city attorney, and oral argument by *Mr. Schoetz.*

*Thos. E. Lyons,* on behalf of the Wisconsin Tax Commission.

*Geo., D. Van Dyke,* respondent, *in pro. per.*

The following opinions were filed January 12, 1915:

VINJE, J.    Upon the rehearing we have been favored with a brief in behalf of defendant and oral argument by its counsel and also by Mr. Lyons in behalf of the tax commission. The argument takes a threefold aspect.    Statutory rules of construction permitting the one contended for by defendant are called to our attention.    The construction given the statute by the tax commission is urged in its behalf, and an inconvenience in the administration of the law as construed by the court is alleged because the personal property tax and the income tax would appear upon different tax rolls.

No exception need be taken to the rules of statutory construction contended for.    They are correct and useful where applicable.    But when a statute, giving its language its ordinary and natural meaning, expresses a result neither absurd nor harsh, but on the contrary one in harmony with the general scheme of the law, namely, that an income tax shall, substantially, become a substitute for a personal property tax, then such natural and ordinary meaning should be given to the language used, and there is no room for construction.    A tax was levied upon incomes for 1911.    A tax upon personal property was levied for said year.    The statute says that a person who has paid a tax upon his personal property during any year may have the same offset for the taxes due upon the income of such person during said year.    Plaintiff paid a tax upon his personal property for 1911.    He paid a tax upon his income during said year.    The statute says the first may be applied in payment of the latter.    Any other construction would lead to a double taxation of a vast amount of

personal property in 1911, such as moneys, credits, stocks, and bonds which have since been exempted from taxation. No intent to impose a double tax thereon can be gathered from the statute. On the contrary it aims to avoid double taxation. Such was the construction given it in the *Income Tax Cases,* 148 Wis. 456, 134 N. W. 673, 135 N. W. 164, where it is said: "By the present law it is quite clear that personal property taxation for all practical purposes becomes a thing of the past." Page 505. It became a thing of the past from the time of the inception of the Income Tax Law and not from one year thereafter. As stated in the former opinion, it is the period of time for which each tax is paid that is made the basis of the right to offset, and not the time when the income tax becomes due.

The construction given laws by administrative departments is certainly entitled to weight—especially when long acquiesced in. But a practically contemporaneous construction of an administrative department cannot be successfully invoked to override a plain meaning of the statute. The inconvenience alluded to is more fanciful than real, as the tax receipt itself gives the right to offset, and that the taxpayer must produce. The conclusion reached in the former opinion is adhered to.

WINSLOW, C. J., and SIEBECKER, J., dissent.

BARNES, J. (*dissenting*). When this case was first decided I intended to state my reasons for dissenting, but pressure from other work was so great that I did not do so. I take this occasion to state my views.

I think the word "income" as used in the constitutional amendment and in the statute refers to net earnings or profits rather than to gross receipts, and that it does not include capital which is taxable under the uniformity rule. If a manufacturing company sells goods to the amount of $100,000

in a year for cash, its gross receipts amount to this sum, but we do not ordinarily understand that this sum is income if it has cost the company $105,000 to manufacture and market the goods which produced the return. It will hardly do to say the illustration is not pat because no distribution is ordinarily made of gross receipts. If the money is not taxable as income in the hands of the corporation, I fail to see how it could become income in the hands of the stockholders by turning it over to them. If the property of a corporation consists of a building and the grounds on which it stands, that property represents the capital of the company regardless of the amount of outstanding stock. The stock simply evidences ownership of a fractional part of the capital and other assets of the company. Its actual value may differ widely from its face value. If the capital is converted to cash, the proceeds is still capital, and if the money is distributed among the stockholders it is a distribution of capital. The certificates of stock, which had a value before the distribution, cease to have any. They have simply been converted into another species of property. Now if the legislature can declare the dividend so received income, it may also declare that the proceeds derived by an individual from the sale of a farm or a house and lot or any other species of property is income. This would amount to a tax on transfers of property instead of a tax on profits. Income does not mean one thing where a corporation is involved and another where an individual is affected. A corporation the 1st of January in any year may own a large quantity of standing timber. It may cut $50,000 worth of such timber and make a profit of $10,000 on its operations over and above the value of the timber standing. According to the idea of the court, the entire $60,000 if distributed is income to the stockholder. I think only $10,000 is income, because that represents the profits made from capital. The removal of $50,000 worth of timber depreciated the capital of the corporation and the

actual value of the outstanding stock to just that extent. The property of the stockholder has not been augmented by the transaction beyond his share of the profits actually made. The form only has been changed. Every dollar he receives in cash on a distribution of capital assets diminishes his investment in the corporation correspondingly. I confess I am unable to see any difference in principle between the distribution of capital assets among stockholders and the payment or partial payment of a note to an individual. If the payment on the principal is not income in the case of an individual, the capital of a corporation which may be distributed is not income. Neither do I see how it can be said that where a corporation has reduced part of its capital assets from one form to another the property acquired in the exchange is income where there is no increase in assets. If it is not income in the hands of the corporation, by what species of jugglery does it become such by transferring it to the stockholder? As to him the transaction amounts to taking wheat to the market and selling it and bringing home the money received. The ore in the Pewabic mine was a capital asset having a determinable tonnage value. Any profit made in the process of mining and marketing the ore was income. But I think the value of the ore in the mine was not income. The capital assets of the corporation were reduced to the extent of the value of that ore by taking it out. When the money received was distributed, the stockholders had money in lieu of an individed interest in a quantity of iron ore equal in value to the money received.

The statute, sec. 1087m—2, sub. 2, defines income as including *"all dividends"* or profits derived from stock. Whether where the property of a corporation is sold and distributed among the stockholders the capital so distributed can be correctly called a dividend, is not very material. The constitution allows a tax to be assessed on incomes. The word "income" must be taken in the sense in which it was gener-

ally understood when the amendment was adopted, and the legislature cannot, under the guise of attempted definition, proceed to tax something as income which was not such in fact. *Income Tax Cases,* 148 Wis. 456, 512, 134 N. W. 673, 135 N. W. 164.

As I understand the opinion, it is conceded that if the technical meaning of the word "income" be taken, a distribution of capital assets does not constitute income. But it is said that the word should be given its "general and usual meaning," and that ordinary dividends of going corporations have, in the common acceptation of the term, been regarded as income whether declared from capital or profits.

It is true that the word "income" is sometimes used as meaning gross income or gross receipts instead of net receipts or profits. But I think it is ordinarily used and understood as being synonymous with gain or profit, and such is the meaning of the word as understood by economists who have written on income taxation and economics. Seligman, Income Tax, § 5; McCullough, Prin. of Pol. Econ. ch. 7, p. 530.

If the idea of the Income Tax Law as set forth in the *Income Tax Cases,* 148 Wis. 456, 505, 134 N. W. 673, 135 N. W. 164, be correct, the purpose was to distribute the burden according to ability to pay. There is no relation whatever between gross income and ability to pay. Imposing an income tax on gross income or receipts might be justified on the ground of overruling necessity if the state were in dire straits, but could be justified on no other ground. As a matter of fact the legislature has not pretended to tax gross income unless it has done so in the case of corporate dividends which are declared to distribute the capital of the corporation. Nearly all corporate dividends are declared to distribute profits or net earnings, and of course in such a case they are taxable. I cannot agree that the distribution of capital assets is generally regarded as income. Herein arises an interesting question. Can the gross income of one tax-

payer be taxed and only the net income of another? The tax may be graduated and progressive, but does the rule of uniformity apply so that the legislature must tax either gross incomes or else net incomes? Art. VIII, sec. 1, of the constitution now provides:

"The rule of taxation shall be uniform, and taxes shall be levied upon such property as the legislature shall prescribe. Taxes may also be imposed on incomes, privileges and occupations, which taxes may be graduated and progressive, and reasonable exemptions may be provided."

In my view of the law a decision of the question is not essential to a decision of the present case. It may not be out of place to remark that in a brief recently filed in another case in this court, the attorney general has taken the position that the rule of uniformity applies to income taxes, except that they may be graduated and progressive.

Under none of the definitions of income could the money derived from the sale of ore be considered income while in the hands of the Pewabic Company, unless it can be said that the change of one form of corporate assets into another creates income. This does not seem reasonable. What is capital in the hands of the company does not become profit because the company distributes it among its owners.

I agree that the word "income" as used in the constitution should not be given a narrow or technical construction. I think, however, that it does not mean gross income or gross receipts, but does mean net income or profits. Unless it be given the first meaning, I do not see how the dividend received by the plaintiff in this case was taxable.

It is, of course, easier to tax gross income than it is to tax net receipts or profits, but this is hardly a substantial reason for saying that the legislature must have intended or was even authorized to tax the species of property which it is easiest to reach. It is much easier to ascertain the gross income of a mercantile or manufacturing company than it is the net income, but still only the net income is in fact taxed.