FINK, Collector, v. NORTHWESTERN MUT. LIFE INS. CO.

(Circuit Court of Appeals, Seventh Circuit.  June 24, 1920.)

No. 2675.

1. **Internal revenue ⊕⟿9—Dividends to policy holders not "income" for year.**

A mutual life insurance company's so-called "dividends," applied at the option of policy holders to purchase paid-up additions and annuities, and also applied in partial payment of renewal premiums, are not income for the year in which so applied, within the meaning of Excise Tax Law, § 38, as "income * * * received * * * during such year"; such "dividends" having been once taxed as part of the income of the year when received.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Income.]

2. **Internal revenue ⊕⟿9—Mutual life insurance company's uncollected premiums not taxable as "income."**

Mutual life insurance company's premiums due and deferred, and interest due and accrued, but not actually collected in cash, are not "income," within Excise Tax Law.

3. **Internal revenue ⊕⟿9—Interest on policy loans, due and unpaid, not taxable as "income."**

Mutual life insurance company's interest on policy loans, which by the terms of the contract was added to the principal of the loan when it became due and remained unpaid by the policy holders, held not "income," within Excise Tax Law.

4. **Internal revenue ⊕⟿9—Amortization of premiums on bonds not deductible from taxable income as "depreciation."**

Under Excise Tax Law, § 38, providing for deduction from taxable income of "all losses · * * * sustained within the year and not compensated by insurance or otherwise, including a reasonable allowance for depreciation of property, if any," mutual life insurance company's decrease in value of assets because of amortization of premiums on bonds are not deductible as "depreciation."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Depreciate.]

5. **Internal revenue ⊕⟿38—Question of deductibility from corporate income of amortization of premiums on bonds held within issues.**

Since, in view of Rev. St. § 989 (Comp. St. § 1635), a suit to recover corporation tax paid is for all purposes a contest between the government and the taxpayer, so that the collector may, on recovery by plaintiff, retain what plaintiff should have paid, and the question in each case is, What tax should plaintiff have paid? in such a suit plaintiff's claim that the question whether decrease in the value of its assets because of amortization of premiums on bonds was deductible from its income was not within the issues could not be supported, where it alleged, in assignments of reasons why the tax was excessive and illegally assessed, that "no greater amount of taxes should have been collected" than a named sum.

6. **Internal revenue ⊕⟿9—Amortization of bond premiums by insurance departments held not to affect deductibility of amortization from income.**

Under Excise Tax Law, the question of the deductibility from taxable income of a mutual life insurance company of its amortization of premiums on bonds is not affected by the fact that such amortization is in accordance with the requirements of the insurance departments of the different states; it not being an "addition required by law to be made * * * to reserve funds."

⊕⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**7. Internal revenue ⬅9—Addition to reserve funds because of liability on contracts held not deductible from income.**

Under Excise Tax Law, mutual life insurance company's so-called addition to reserve funds, because of liability on supplementary contracts not involving life contingencies and canceled policies on which a cash surrender value might be demanded, *held*, in view of St. Wis. 1919, §§ 1946x, 1950, 1952, not deductible from income, being a mere bookkeeping reservation of reserve funds already built up.

In Error to the District Court of the United States for the Eastern District of Wisconsin.

Action by the Northwestern Mutual Life Insurance Company against Henry Fink, Collector of Internal Revenue. Judgment for plaintiff (248 Fed. 568), and defendant brings error. Modified.

H. A. Sawyer, of Milwaukee, Wis., for plaintiff in error.

Sam T. Swansen, of Milwaukee, Wis., for defendant in error.

Before BAKER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. This case comes here on a writ of error to reverse the judgment for plaintiff in the District Court, entered by Judge Geiger. See 248 Fed. 568, where the facts are fully stated. The insurance company, the defendant in error, will herein be known as plaintiff, and the collector of internal revenue, plaintiff in error, will herein be known as defendant.

The Commissioner of Internal Revenue amended plaintiff's returns of income for the years 1909 and 1910, filed under the Excise Tax Law of August 5, 1909, and thereby greatly increased the tax. This suit was brought to recover that increase, paid under protest. Defendant states the following as the questions involved, and they will be determined as written:

## I.

[1] 1. Whether dividends applied at the option of the policy holders to purchase paid-up additions and annuities were not income for the year in which so applied, within the meaning of the act.

2. Whether dividends applied at the option of the policy holders in partial payment of renewal premiums were not income for the year in which so applied, within the meaning of the act.

The Excise Tax Act of August 5, 1909 (36 Stats. at Large, c. 6, pp. 11, 112, § 38), provides:

" * * * Every insurance company * * * organized under the laws * * * of any state * * * shall be subject to pay annually a special excise tax * * * equivalent to one per centum upon the entire net income over and above $5,000 received by it from all sources during such year, exclusive," etc. " * * * Such net income shall be ascertained by deducting from the gross amount of the income of such * * * insurance company, received within the year from all sources, * * * (second) * * * and in the case of insurance companies the sum other than dividends, paid within the year on policy and annuity contracts and the net addition, if any, required by law to be made within the year to reserve funds."

Disregarding the deductions, the basis for the tax is "income * * * received * * * during such year." Plaintiff is a mutual

insurance company, organized under the laws of Wisconsin, and annually collects level premiums which are sufficiently large to pay the insurance cost, including reserves, and all of the expenses of the business. Usually there is something left over for a surplus, which surplus is required by the laws of the state of Wisconsin to be divided among the policy holders. The dividend of surplus is in no sense a dividend of profits. By dividing such a surplus by means of the so-called "dividend," the company simply says to its policy holders:

"There is available to you, from funds heretofore paid by you to this company, a sum of money that may be used by you for the payment of premiums, paid-up additions, annuities, or for whatever use you may choose to make of it."

The Excise Law did not take effect until January 1, 1909, and, inasmuch as the surplus converted into dividends in 1909 was received by the company before the law went into effect, that surplus, converted into dividends, was not income for 1909. The surplus from premiums, out of which the dividends for 1910 were declared, were a part of the income for 1909, and formed a basis for taxation, under the Excise Law, for that year, and could not, as dividends, form a basis for further taxation. In other words, the fair interpretation of the statute is that income forms a basis for taxation only for the year in which it was received. Herold v. Mutual Benefit Life Ins. Co., 201 Fed. 918, 120 C. C. A. 256; Maryland Casualty Co. v. United States, 251 U. S. 352, 40 Sup. Ct. 155, 64 L. Ed. ——, decided by the Supreme Court of the United States January 12, 1920; Hays v. Gauley Mt. Coal Co., 247 U. S. 192, 38 Sup. Ct. 470, 62 L. Ed. 1061. There is nothing in Maryland Casualty Co. v. United States, supra, out of harmony with this interpretation. It was said that funds of an insurance company, which had escaped taxation in the year in which they were received, because they had been set aside as a reserve, in that year, and therefore had formed no basis for taxation, might, if they were released from that reserve to the general uses of the company, be treated as income for the year in which they were so released.

## II.

[2] 3. Whether premiums due and deferred, and interest due and accrued, but not actually collected in cash, were not income within the meaning of the act.

In Hays v. Gauley Mt. Coal Co., supra, this question was answered contrary to the contention of the government in the following language:

"The expression 'income received during such year,' employed in the act of 1909, looks to the time of realization, rather than to the period of accruement, except as the taking effect of the act on a specified date (January 1, 1909), excludes income that accrued before that date."

See, also, Maryland Casualty Co. v. United States, supra.

## III.

[3] 4. Whether interest on policy loans, which by the terms of the contract was added to the principal of the loan when it became due and remained unpaid by the policyholders, was not income, within the meaning of the act.

This question is answered contrary to the government's contention by Board of Assessors, etc., v. New York Life Ins. Co., 216 U. S. 517, 30 Sup. Ct. 385, 54 L. Ed. 597.

## IV.

[4] 5. Whether increases in the value of assets because of accrual of discounts were not income, and decreases in value of assets because of amortization of premiums on bonds were a deduction from income under the act.

In the reassessment the commissioner added to income for the two years a total, as "Accrual of discount," of $67,268.96, and deducted for "Depreciation" (amortization of bonds) for the two years $231,654.86. In his findings of fact, Judge Geiger said:

"Plaintiff waived objection in each amended return made by the Commissioner of Internal Revenue to the item 'Accrual of discount' and to the item 'Depreciation.'"

Thereupon the court disposed of those items by deducting the "Accrual of discount" from the "Depreciation," giving plaintiff a net deduction of $164,385.90. Inasmuch as plaintiff waived objection to items "Accrual of discount," the propriety of such a charge will not be discussed here. If deduction by reason of amortization of premiums on bonds was proper, it must have been so under the following provision of the statute, viz.:

"All losses actually sustained within the year and not compensated by insurance or otherwise, including a reasonable allowance for depreciation of property, if any."

There was no sale. The item arose from mere book adjustments. In our opinion, amortization of bonds does not come within any definition of "depreciation" under this or similar acts. In considering the excise statute, the Supreme Court has said:

"What was here meant by 'depreciation of property'? We think Congress used the expression in its ordinary and usual sense as understood by business men. It is common knowledge that business concerns usually keep a depreciation account, in which is charged off the annual losses for wear and tear, and obsolescence of structures, machinery, and personalty in use in the business."

The court then said that it did not consider the statute covered a depreciation of a mine by exhaustion of the ores. Van Baumbach v. Sargent Land Co., 242 U. S. 524, 37 Sup. Ct. 201, 61 L. Ed. 460. See also Lumber Mut. Fire Ins. Co. v. Malley (D. C.) 256 Fed. 383; Baldwin L. Works v. McCoach, 221 Fed. 59, 136 C. C. A. 660; Van Dyke v. Milwaukee, 159 Wis. 467, 146 N. W. 812, 150 N. W. 509.

[5] Plaintiff's claim that this question is not within the issues in this case is clearly overborne by its second and eleventh assignments of reasons why the tax is excessive and illegally assessed, viz.:

"2. No greater amount of taxes should have been * * * collected * * * for the year 1909 than the sum of $43,729.78," etc.

No. 11 is similar. It seems clear that a suit of this character is for all purposes a contest between the government and the taxpayer; the question being, how much tax should the plaintiff have paid? In

Crocker v. Malley, 249 U. S. 223, 39 Sup. Ct. 270, 63 L. Ed. 573, 2 A. L. R. 1601, the court found that the tax actually assessed against the plaintiffs as a joint-stock association was improperly assessed and collected, because the plaintiffs were not a joint-stock association, but simply trustees. At page 235 of 249 U. S., at page 272 of 39 Sup. Ct. (63 L. Ed. 573, 2 A. L. R. 1601), the court said:

"The District Court, while it found for the plaintiffs, ruled that the defendant was entitled to retain * * * the amount of the tax that they should have paid as trustees. * * * The Commissioner of Internal Revenue rejected the plaintiffs' claim, and the statute does not leave the matter clear. The recovery therefore will be from the United States. Rev. Stats. § 989. The plaintiffs, as they themselves alleged in their claim, were the persons taxed, whether they were called an association or trustees. They were taxed too much. If the United States retains from the amount received by it the amount that it should have received, it cannot recover that sum in a subsequent suit."

See, also, Missouri River, F. S. & G. R. Co. v. United States (C. C.) 19 Fed. 67.

[6] Plaintiff cites the Eaton Cases (D. C.) 218 Fed. 188. The reason given by the court, in the first case, for allowing items "Bonds for accrual of discount" and "Bonds for amortization of premiums" is:

"Because the testimony shows that the method of annually scaling down the book values of bonds purchased at a premium, and making additions to the book value of bonds purchased below par * * * is in accordance with the law and the requirements of the insurance departments of the different states."

The record here shows no such practice by plaintiff. What law that action was in accordance with the decision does not say, but it certainly was not in accordance with the Excise Tax Act. Whether it was in accordance with the requirements of the insurance departments of the different states makes no difference. The only clause, if any, under the Excise Law, which would permit the Commissioner to exercise any influence upon deductions is the following, relating to deductions:

"The net addition, if any, required by law to be made within the year to reserve funds."

Under authority of Maryland Casualty Co. v. United States, supra, the requirement of the insurance commissioner as to reserves would be a thing "required by law."

We are of opinion that decreases in value of assets because of amortization of premiums on bonds were not a proper deduction, and that there should be deducted from the judgment of the court below the sum of $1,643.86, with interest thereon at the rate of 6 per cent. from January 22, 1912, to the date of the entry of the original judgment on November 16, 1917.

## V.

[7] 6. Whether an addition to the reserve funds because of liability on supplementary contracts not involving life contingencies and canceled policies upon which a cash surrender value may be demanded was deductible from gross income under the act.

The Excise Law permits insurance companies to deduct "the net ad-

dition, if any, required by law to be made within the year to reserve funds." Section 1952 of the Wisconsin state law provides:

"In determining the amount of the surplus to be distributed there shall be reserved an amount not less than the aggregate net value of all the outstanding policies."

Under this section and section 1950, the insurance commissioner of Wisconsin, as of December 31, in the years 1908, 1909, and 1910, certified his computation of reserves, and did not include reserves as against the contracts in question. All the actuary would say about what was required by the insurance commissioner with reference to the reserve in question was that the blank that the company was compelled to fill in contained an item "Reserve liabilities," but that no such item was included in "Net reserve funds."

Section 1946x defines " 'reserve' at any time within the policy year" and "terminal reserve." The latter is defined to be:

"The sum sufficient, with the net premiums coming due, to provide for the future mortality charges, and mature the policy according to its terms, all computed upon the table of mortality adopted and the rate of interest assumed."

The end to be reached in life insurance is to mature the policy by building up a reserve. The basis of arriving at that desired end is the table of mortality and the rate of interest assumed, and by the use of them the net premium is fixed and the reserve is built up from net premiums. Repeating the process of making the terminal reserve from year to year until the time when the payment of premiums ceases matures the policy. The net premium coming due is the foundation of the reserve. Actuary Evans states it thus:

"The reserve is the balance of cash that the company must have on hand in order to pay out the contract, assuming that the future premiums under the policy are paid to the company; or, in other words, the increase in the reserve on the policy would be, specifically, the amount of the premium for that year paid in, interest on the entire sum, and the cost of the insurance deducted."

Assistant secretary Anderson explained that—

"When the policy becomes a claim, it is charged off in the death loss account as a disbursement * * * for the full amount of the * * * policy."

When asked what, if anything, is deducted from the general reserve fund when death occurs, he answered:

"A corresponding amount to the death loss which was taken out of disbursements—the reserve—is held on that policy. I mean that one part of reserve account is wiped out and another created."

Just here is the misconception as to what is a life insurance reserve. The reserve meant in the law is that fund which is built up to mature the policy. Of course, at the time when the money is taken out of the reserve account and is not used for immediate payment, it must be held somehow. In other words, it is reserved for the purpose of future payment. The full amount is there at the beginning, and there is nothing that has to be built up or matured. Nothing more can be reserved on that account.

We are of opinion that the decrease in the net value of assets because of amortization of premiums on bonds was not proper, and that the decrease in the net value of assets because of liability on supplementary contracts not involving life contingencies and canceled policies upon which a cash surrender value may be demanded was not proper, and that there should be deducted from the judgment of the court below on account of the first item the sum of $1,643.86, and on account of the latter item the sum of $9,969.08, an aggregate of $11,612.94, as of January 22, 1912, and that judgment should be entered for the sum of $131,755.84, being the principal of the original judgment, less said sum of $11,612.94, with interest thereon at 6 per cent. from January 22, 1912, with costs in the District Court, which said interest amounts, to the date of the entry of the judgment in the District Court on December 16, 1917, to $46,641.57.

It is adjudged that each party pay its own costs of the proceedings in this court.