SERRALLÉS ET AL., PLAINTIFFS AND APPELLEES, *v.* GALLARDO, ACTING TREASURER, DEFENDANT AND APPELLANT.

APPEALS from the First District Court of San Juan in Actions for the Refund of Taxes.

Nos. 3153, 3154, 3155, 3156 and 3157.—Decided January 31, 1924.

TAXATION—INCOME TAX— CORPORATION— PROFITS— DIVIDENDS— STOCKHOLDERS.—
The profits of a corporation are converted into income of the stockholders only when they are distributed as dividends.

ID.—ID.—PARTNERSHIP—PROFITS.—It not having been proved that the partners in this particular case received their profits monthly and the evidence showing on the contrary that they received the profits and became the individual owners thereof on April 30, 1918, the law in force on that date should be applied for the collection of the tax.

The facts are stated in the opinion.

*Mr. J. Texidor* for the appellees.

*The Attorney General* and *Messrs. R. H. Todd, Jr.,* and *C. Llauger Díaz* for the appellant.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

The same fundamental question is involved in all of these appeals. The cases were considered in a single opinion by the district court and submitted together to this court. Although separate judgments will be rendered, one opinion will serve for all.

In two letters introduced in evidence the issue was clearly raised. The said letters read as follows:

"To the Treasurer of Porto Rico, San Juan, Porto Rico.—Sir: In the name and representation of Juan Eugenio Serrallés of Ponce, Porto Rico, and in accordance with the provisions of section 66 of Act No. 80, we have the honor to request the refund of certain income taxes erroneously imposed upon and collected from the said taxpayer for the year 1918 on his share of the profits derived from the Sucesión J. Serrallés during the business year ended April 30, 1918.

"In determining the amount of the tax corresponding to the said year that Department failed to prorate the income and erroneously applied the rates prescribed by Act No. 80 to the total income, while the fact is that only the part of the income corresponding to the period from January 1 to April 30, 1918, is subject to those rates. The remaining part of the income should be taxed according to the rates fixed by the Federal Law of September 8, 1916, inasmuch as Act No. 80 was only made retroactive to January 1, 1918.

"There is no rule of equity, statute or precedent that justifies the method employed in computing the tax assessed in this case. On the contrary, the Law specifically provides:

" 'That in no case shall a tax rate higher than the one established by income laws in force on said date be collected on income obtained prior to January 1, 1918.'

"If for the purpose of imposing the tax upon the partnership in its collective character the Department recognized that the income should be prorated so as to tax only the part of it derived during the period from January 1 to April 30, 1918, it is not understood why it employs a different method for assessing the tax on the same income after it is transferred to the members of the partnership in their individual capacity.

"As will be seen, this results in an anomaly against the interests of the taxpayer to the point of obliging him to pay a tax much more than a hundred per cent higher than that for which he is responsible and of course we hope for the correction of the error committed by that office so that the tax assessed will be just and in consonance with the specific provisions of the law.

"Under such circumstances, from the income declared by our client, amounting to $118,184.60, there should be deducted the sum of $103,022.79, which includes the share obtained in the business of the Sucesión J. Serrallés, plus the sum of $6,000 received as salary, or a total of $114,022.78, for obtaining the part taxable under the

rates of 1917, amounting to $76,015.42, leaving the balance of the total income, or $42,169.42, subject to the rates of 1918. . . . . .''

"Sirs: As an answer to and a decision of your claim of the second instant against the income tax imposed upon Juan Eugenio Serrallés of Ponce for the tax year of 1918 according to schedule No. 335, receipt No. 289, requesting the refund of a part of this tax erroneously assessed and collected on the share obtained by Mr. Serrallés in the profits derived by the Sucesión J. Serrallés during the business year ended April 30, 1918, I hereby inform you that members of civil partnerships are obliged to make declarations of income for the calendar year the same as other individuals and should include in their respective declarations the part received from the profits of civil partnerships determined at the end of the business year which terminates within the calendar year for which the declaration is made.

"The income that figures in the declaration of Juan Eugenio Serrallés for the year 1918 was received by him within the period from January 1st to December 31st and consequently his allegations on the point raised have no foundation, inasmuch as the partnership of Sucesión J. Serrallés paid and Mr. Serrallés received in April, a date included within the calendar year, his share of the profits of the said partnership.

"The profits or income derived from a civil partnership for the individual partner can not be determined or reduced to possession until it is finally determined by means of a balancing of the books, and the profits for the year 1918 having been determined by a balance of April 30, 1918, of the Sucesión J. Serrallés, showing that the share of Juan Eugenio Serrallés was $108,022.78, this income added to that received from the other sources is subject to the payment of surtax on the amount exceeding $5,000 as specifically provided by section 4 of Act No. 80 under the provisions of which the tax was assessed."

The district judge held that the method followed for the collection of the tax was erroneous and sustained all of the complaints. The district judge was of the opinion that the incomes received by the members of the partnership should be prorated among the twelve months covered by the balance. Application of this method gives the result that too much was collected from the plaintiffs, because the rate of taxation

which governed in 1917 was lower than that which was in force in 1918. In his judgments the judge ordered the Treasurer to refund the excess to the plaintiffs.

The reasoning of the trial judge is as follows:

"The court is of the opinion that the Department acted erroneously in taking as the tax rate for the income declared by the plaintiff the rate fixed by Act No. 80 of 1919 without taking into account, as alleged by the plaintiffs, that the said income was received during a period (business year of the partnership) which included a part of the year 1917 and a part of the year 1918. An unjust distinction was made between the partnerships and the partners composing them according to the testimony of Purcel himself. In assessing the taxes of the former the profits were prorated between the years 1917 and 1918 and those received in 1917 were assessed under the tax rate of the Act of 1917 and those received in 1918 under the rate fixed by said Act No. 80. But as regards the individual partners they were not given this benefit because, in the opinion of the Department, they could not determine what amount corresponded to one part of the year and what to the other.

"The difficulty encountered by the Department which obliged it to establish the unjust rule referred to is clearly met by section 31 of Federal Regulation No. 33, which reads as follows:

"'There is also a regulation that a partnership shall have the privilege of fixing and making returns on the basis of a fiscal year, the same as provided for corporations. If the fiscal year of a partnership (other than the calendar year) ends in a calendar year for which there is a rate of tax, different from the rate for the preceding calendar year, for the purpose of the income tax, each partner's share of partnership profits shall be divided in the proportion of the different calendar years composing said fiscal year and the rate of tax for the respective calendar year shall apply to that part of such profits as thus falls within said calendar years. Any partnership may at its option designate the last day of any month as the close of its fiscal year. In each case where the partnership's fiscal year differs from the calendar year it shall, not less than 30 days prior to March 1, give notice in writing to the collector of internal revenue of the district in which its principal place of business is located that the day it has thus designated is the closing day of its fiscal year.'"

"See Black, Income and other Federal Taxes, 4th edition, page 237, and even more clearly in section 952 of Regulation No. 45, which reads as follows:

" 'Fiscal year of corporation ending in 1918.—The method provided for computing the tax for a fiscal year beginning in 1917 and ending in 1918 is as follows.—(*a*) the tax attributable to the calendar year 1917 is found by computing the income of the taxpayer and the tax thereon in accordance with Title 11 of the Revenue Act of 1917 as if the fiscal year was the calendar year 1917, and determining the proportion of such tax which the number of months falling within the calendar year 1917 is of the number of months in the entire period; (*b*) the tax attributable to the calendar year 1918 is found by computing the income of the taxpayer and the tax thereon in accordance with the present statute as if the fiscal year was the calendar year 1918, and determining the proportion of such tax which the number of months falling within the calendar year is of the number of months in the entire period; and (*c*) the tax for the fiscal year is found by adding the tax attributable to the calendar year 1917 and the tax attributable to the calendar year 1918.'

"See the work cited at page 320.

"See also Holmes, Income Tax, page 113, from which we quote the following:

" 'A partnership has the same privilege of fixing and making returns upon the basis of its own fiscal year as is accorded to corporation. If a fiscal year ended during 1916 or ends during a subsequent calendar year for which there is a rate of tax different from the rate of the preceding calendar year, the rate for the preceding calendar year applies or shall apply to an amount of each partner's share of such partnership profits equal to the proportion which the part of such fiscal year falling within such preceding calendar year bears to the full fiscal year and the rate for the calendar year during which such fiscal year ends shall apply to the remainder of such profits. As an illustration of this provision, assume that a partnership closed its fiscal year on June 30, 1916. In such case after each partner has determined the share of the profits to be reported he will be permitted to divide the amount by two (since one-half of the fiscal year was in 1916 and one-half in 1915) and pay at the 1915 rates on one-half and the 1916 rates on the other half. Similarly in the case of a fiscal year ending in

1917 the 1916 rates will apply to such proportion of the profits as the part of the fiscal year in 1916 bears to the whole fiscal year. Prior to this amendment of the statute the Treasury Department held that where the fiscal year of a partnership ended at any time other than December 31st the total profits of the partnership were required to be reported as income for the calendar year in which the fiscal year of the partnership ended.' "

Not agreeing with the trial judge, the Treasurer appealed to this court and in his brief he argues his position convincingly. In our opinion the Treasurer is right and the judgments appealed from should be reversed.

The law applicable is Act No. 80 of 1919. Its second section (Acts of 1919, page 614) provides, among other things, as follows:

"The term 'taxable year' means an accounting period of twelve months upon the basis of which net income shall be computed pursuant to this Act. The first taxable year for the purpose of this Act, shall be the calendar year ending the thirty-first day of December, nineteen hundred and eighteen, or any accounting period of twelve months ending during the calendar year nineteen hundred and eighteen. Subsequent taxable years shall be computed from the date on which the first taxable year expires; *Provided,* That in no case shall a tax rate higher than the one established by income laws in force on said date be collected on income obtained prior to January 1, 1918."

The Treasurer understood that the proviso of the paragraph quoted did not authorize the incomes to be prorated, because although the said incomes proceeded from a period of time that included a part of the year 1917, they were not actually received by the partners individually until the year 1918.

The provision of section 4 of Federal Regulation 33, cited in his opinion by the trial judge, is very important. It reads as follows:

"*Partnerships.*—It is held that the income of a partnership

accrues to the individual partner at the time his distributive interest is determined. In the returns of income made by individuals for the calendar year there should be included such income accruing from the business of partnership's for the business years of the partnerships as may have been definitely ascertained by means of a book balance, whether distributed or not. Members of partnerships are required to make returns of income, as individuals, for the calendar year, and should include in their returns of income their interest in partnership profits ascertained at the end of the business year falling within the calendar year for which the individual return is being rendered." Section 4, page 11, Regulations No. 33, Revised.

That section has been commented on as follows:

"What the government wants from an individual who is a partner in one or more firm's is a full and accurate return of his share of the partnership profits for the *twelve months* ending at some date during his personal fiscal year. The acceptance of this as sufficient obviate's the necessity of guessing or roughly calculating the partner's income when the fiscal year of the partnership does not agree with that of the partner. It is convenient and accurate to report the amount shown by the partnership records, and as the income tax has come to stay, individuals should change their own fiscal periods to the regular closing date of their partnership unless it operates to increase their taxes." Income taxes Procedure by Robert H. Montgomery, page 377, Ed. of 1919.

"The profit accruing from one's share in the busine's's conducted by a partnership is a part of his income. The net earnings of the partnership constitute income of the firm so long as they remain in the possession or to the credit of the firm a's such. But when a proportionate part is drawn out and paid over to an individual partner it becomes and constitutes a part of his private income." Black, Income and other Federal Taxes (1920), par. 60, page 72.

"The distributed interests of the partners in the firm's net income should be the amount shown by the books when closed and not their distributive interests in the amount of income of the partnership represented by the actual cash receipts, unless the partnership keeps it's books on the basis of cash receipts and disbursements." Holmes, Federal Income and Profits Taxes (1920) page 115.

The appellees contend in their brief that Regulation 33

is not applicable. We are of the contrary opinion. Section 33 of Act No. 80 of 1919 (Acts of 1919, page 650) reads as follows:

"Section 33.—That the Treasurer be, and he is hereby authorized to issue such rules and regulations as may be necessary for the purpose of putting into effect the provisions of this Act; but until such rules and regulations are promulgated, the rules and regulations actually in force for the administration of the Federal Law of September 8, 1916, as amended October 3, 1917, shall remain in full force and effect in so far as they do not conflict with the provisions of this Act."

It would have to be shown that the Regulation was in conflict with the law of Porto Rico, and that does not appear in any way. Referring to the proviso of Section 2 of Act No. 80 of 1919, it will be observed that it speaks of *income obtained prior to January 1, 1918.* When did the partners obtain the incomes declared in the schedule of 1919 for the purposes of the assessment of taxes for the year 1918? Their own witness, Rafael M. Raldiris, auditor of the Mercedita Central, testified at the trial as follows:

"Defendant: Q.—In those accounts of the Serrallés partners that you have examined, do the profits figure monthly? A.—No; the profits are distributed annually. Q.—On what date did they receive the profits of that year? Plaintiff: All depends on the receipts of the profits. One thing is that the Treasurer holds one opinion and another thing is that we dispute it. Q.—When were the profits paid? A.—Those profits were received monthly and they were paid annually. Q.—When did they take possession of the profits? A.—On April 30th. Q.—Of what year? A.—1918."

The plaintiffs offered no evidence of the profits obtained month by month. There is nothing in the record showing the exact profits for the months of 1917 and for the months of 1918. If it had been proved that the partners received individually profits month by month, the case would have been different. What is shown is that the profits de-

clared correspond to a period of life of the civil partner-
ship which includes months of 1917 and months of 1918.
It may be that during the months of 1917 there were only
expenses, or perhaps losses, and that all of the profits were
actually obtained in 1918. But apart from this consider-
ation, the real basis for the decision of the question is in
the determination of the moment when the partners received
and individually became the owners of the profits, and that
moment was clearly in 1918.

Let us suppose that the partnership had made large
profits in the months of 1917 and then had suffered losses
in the months of 1918, would the partners have declared the
profits of 1917 month by month? Certainly not, and they
would have acted correctly, because the said profits had never
materialized for them.

The parties have cited no jurisprudence with regard to
partnerships, but in respect to corporations there are many
decisions which hold that:

"The profits of a corporation are converted into income of its
stockholders when such profits are distributed as dividends, but not
before." *Miller* v. *Payne*, 150, Wis. 254, 136 N. W. 811; *Will of
Pabst*, 146 Wis. 330, 131 N. W. 739; *Gibbons* v. *Mahon*, 136 U. S.
549, 10 Sup. Ct. 1057, 34 L. Ed. 525; *Hyatt* v. *Allen*, 56 N. Y.
553, 15 Am. Rep. 449; *Minot* v. *Paine*, 99 Mass. 101, 96 Am. Dec.
705; *Van Dike* v. *City of Milwaukee*, 146 N. W. 812.

For all of the reasons stated the judgments appealed
from should be reversed and substituted by others dismissing
the complaints, without special imposition of costs.

*Reversed.*

Justices Wolf, Aldrey and Hutchison concurred.

Mr. Justice Franco Soto took no part in the decision
of this case.