**DEIBEL et, Plaintiffs-Appellants, v. WILSON et, Defendants-Appellees.**

Ohio Appeals, Tenth District, Franklin County.

No. 5792. Decided December 13, 1957.

472

Allen I. Pretzman, J. Raymond Snowden, Columbus, for plaintiffs-appellants.

Hale, Kincaid & Palmer, Samuel B. Randall, of Counsel, Columbus, for defendants-appellees.

(HORNBECK, J, of the Second District; DEEDS and FESS, JJ, of the Sixth District, sitting by designation in the Tenth District.)

## OPINION

By HORNBECK, J.

This is an appeal on questions of law and fact from a judgment of the Common Pleas Court denying an injunction to plaintiffs and dismissing their petition.

Plaintiffs are owners of dwellings in Rosemary Addition to the City of Columbus. Defendant, a physician in the general practice of medicine, since 1946 has been the owner of Lot No. 77 and one half of Lot No. 78 in Rosemary Addition, also known as 26-28 West Henderson Road.

The deed through which defendant acquired his lots carried, by reference, a restriction that his lots "shall be used for (1) residence purposes only and (2) not for any purpose of business or trade." (Numbering ours.) The plaintiffs acquired their lots with like restriction.

By Ordinance No. 1206-54 of the City of Columbus, Rosemary Addition was zoned and plaintiffs' and defendant's lots were classified as a residential district.

Defendant desired to build a residence in which provision would be made for his office and engaged an architect to prepare plans for the structure. After the plans and specifications had been completed and when the defendant was ready to proceed with the erection of his proposed building, although he had been informed that re-zoning would not be required, upon learning that some of the residents of the addition

were objecting to the erection of the building, he made application to the Planning Commission, supported by a petition of property owners, for a change in the zoning of his lots from R-3, Single Family Residential, to C-2 Commercial. This petition was heard and refused because of the residential character of the neighborhood.

Defendant applied to the Division of Building Regulations, Department of Public Safety, for a building permit, which was refused.

We have no formal order setting forth the refusal of the permit; but Mr. John Lorain, a building inspector, testified that the reasons for the refusal were that the plans "were not of an entirely residential character" and that "They show that it [the building] will be used * * * for the treatment of patients there, and show workrooms and laboratory, and so forth." He was asked what position the department took in regard to a house that was already there and used for residential purposes and converted to a doctor's office, as compared to one where the doctor's office is a part of the original construction. He answered, "Well, in * * * an existing residence, we will go along * * * with a doctor or professional man having his offices in a building, as long as there is no—I mean nothing there to show us that it will become a public nuisance." He said also that the application was rejected because there was "no existing residence on the lots" and the office could not be accessory to the residence.

The defendant was advised by the Planning Commission to take his problem to the Board of Zoning Adjustment, which he did. This Board has jurisdiction, under Section 47.25, Zoning Ordinance, "to hear and decide appeals from and review any order, * * * decision, or determination made by the building inspector in the administration of this ordinance" and "shall make such order * * * as in its opinion ought to be made in the premises, and to that end shall have the powers of the office from whom the appeal was taken."

After an open hearing on the referral, at which were present the defendant and certain of the plaintiffs, the Board reversed the order of the building inspector and ordered the permit to be issued.

Upon these facts, other provisions of the zoning ordinance, and the evidence developed in this suit, the plaintiffs base their action and prayer for a permanent injunction enjoining the defendant "from proceeding with the construction of said medical and residence building or that part thereof which is to be used for medical practice and trade, * * *."

The first cause of action in plaintiffs' petition avers a violation of the building restriction in the deed to defendant.

The second cause of action avers violations of the zoning ordinance. We speak of the zoning ordinance in the singular form although there are two ordinances offered as exhibits but, insofar as this case is concerned, they do not differ.

Upon trial had in Common Pleas Court, a temporary or permanent injunction was denied. Thereafter, when the appeal was perfected, a temporary restraining order was granted. In the interim between the granting of the permit to build and the issuance of the injunction, de-

fendant proceeded with his building until it had reached completion of the frame work, the roofing, and some of the siding.

We now consider the first cause of action and hold that the proof will not justify the relief prayed for, for three reasons:

(1) The restriction applies to the use of the lot for the prohibited purposes. The restriction was to run for thirty-five years and will expire on May 18, 1958. The only use which conceivably could offend the covenant is a use of a part of the structure for a medical office. That use cannot be for more than a few months, at most, and probably will not begin before the restriction has terminated. There will be, at the effective date of any injunction that might be granted by reason of this proceeding, very little, if any, value to the dominant lots in the restrictive covenant. **Brown v. Huber et al, 80 Oh St 183, 206, 207.** This is true, not because of change in the character of buildings in the district, but because at the most there could be but a very short period left in the duration of the restriction.

(2) If no part of the structure could be used for such office purpose during the life of the restriction, that should not prevent the completion of the building and its use for residential purposes only.

(3) The use proposed is not, in our judgment, for "business" or "trade." We will discuss this phase of the restriction when we come to consider the zoning ordinance.

We next consider the second cause of action of the petition.

The sections of the zoning ordinance here involved, which, it is claimed, have application to the facts developed, are:

"Section 47.02.3. * * * Within an R-3 area district no buildings * * * shall be used and no buildings shall be erected which are arranged, intended or designed to be used for other than one or more of the following specified uses:

"A. Dwelling: Single Family Residence together with such other buildings as are * * * appurtenant thereto. * * *, and shall have provision on the lot of at least one off-street parking space per dwelling * * *."

"Section 47.04 [of Ordinance No. 966.54] Accessory Uses in Residential Districts. Residential Character. An accessory use customarily incident to a use permitted in a residential district, * * * shall be permitted in such districts respectively, subject to the limitations stated herein, and shall not be such as to infringe upon the residential character of the district."

Section 47.04, Paragraph 2: "The office of an architect, attorney, clergyman, dentist, engineer, physician, surgeon or other professional person may be located in a residence or an apartment used by such person as his private residence. These office uses do not include the services of more than three (3) other persons not residing on the premises, work rooms, clinics, or the treatment or housing of animals."

"4. No structure shall be erected which shall be designed or constructed with any special structural appearance for use as a business, trade or industry, or other use conducted for gain. Said accessory buildings, shall not occupy more than 40% of the area of the required

rear yard and in the case of a corner lot shall be located back of any required set back of a specific building line."

Plaintiff claims that the Board of Zoning Adjustment, hereinafter frequently referred to as the Board is but a fact-finding body before which the defendant had the burden of going forward and proving his right to the issuance of the permit and that it failed to give effect to the sections of the ordinance which we have quoted; that it did not consider the plans for the building nor interrogate the witnesses respecting the construction and use of multiple workrooms in connection with defendant's medical practice; that the Board acted illegally, without authority, arbitrarily and unreasonably in reaching its decision to grant the permit to defendant to build as he proposed.

The parties are in agreement that the test which we shall apply to the ruling of the Board is whether it abused its discretion in making the order granting the permit.

We are in agreement with the contention of plaintiff that the burden before the Board was upon the defendant; but the Board, as an administrative body, had the right to shape its proceedings with the obligation of securing the necessary facts upon which it could act intelligently on the question before it for determination.

The evidence before the Board, and here, is that the defendant, a physician, and his wife propose to reside in the building to be erected; that he will engage in the general practice of medicine and will have but one employee; that the equipment in the rooms to be used as an office is that ordinarily employed by a practicing physician; that there will be no bed in the office; that he anticipates that he will attend twenty or thirty patients per day, not more than two or three of whom, ordinarily, will be in his office at the same time.

The proposed building is planned for a combination residence and office structure to cost, when completed, $75,000. The type of construction is wood studding and brick veneering. The first story is to be fronted with Wyandotte brick with "combination board and batten above on the second floor portion of the residential." The architect says, "All in all, the general character of design of appearance of this building would be such as it would fit well into any high-class area even such as Arlington and the upper portion of Arlington."

The rooms to be used in the office of defendant are:

Consultation Room—11 ft. 6 in. x 17 ft.

Room No. 10—4 ft. x 5 ft. with storage closet 21 x 36 in.

Corridor—4 ft. wide x 24 ft. long.

Room No. 9 (Treatment Room)—5 ft. 3 in. x 9 ft.

Room No. 8 (Laboratory)—4 ft. x 7 ft.

Toilet 4 ft. x 7 ft.

Room No. 6 (Dressing Room)—11 ft. 6 in. x 7 ft.

Room No. 5 (houses air-conditioning unit and heating plant exclusively for medical part of building)— 7 ft. x 8 ft.

Room No. 4 (Recovery Room)—7 ft. x 11 ft.

Rooms Nos. 2 and 3 (Diet and Weight Control Room)—15 ft. 6 in. x 7 ft. (now one room, but subject to division into two rooms, if required.)

Additional Hallway—4 ft. x 15 ft. 8 in.

Room No. 1 (Library and Record Storage Room)—7 ft. x 11 ft.

Room No. 12 (Storage Room)—6 ft. 6 in. x 8 ft.

Room No. 11 (Drug Room)—4 ft. x 6 ft.

Waiting Room (not numbered)—16 ft. x 18 ft.

All of these office rooms are on the first floor and are of an area of 1,667 square feet. Also on the first floor are four living rooms with closets occupying 1,547 square feet. There is a basement, 7 rooms, 1,497 square feet, a part of the residential unit. The second floor, 4 rooms with closets, is entirely residential. In all, 70% of the area in the structure will be devoted to residential uses and 30% to office.

Plaintiffs discuss accessory uses from the ordinance Section 47.25.15:

"Permit in any district any use or building deemed by said board to be in general keeping with and appropriate to the uses or buildings authorized in such district. * * *."

and claim, as before stated, that the Board is a fact-finding body and did not have sufficient facts before it to support the order which was made. Several cases are cited, one only from **Ohio, The L & M. Investment Co. v. Cutler et al, 125 Oh St 12.** This was a hardship case in which the court held that:

"The board, upon finding that such difficulties or hardships would ensue in applying the strict letter of the ordinance provisions, may vary the application in accordance with the provisions of such sub-section and may especially do so if it finds and assigns specific and adequate reasons therefor."

The principal question in this case was the validity of the zoning ordinance under consideration as against the contention that its provisions constituted a delegation of legislative power within the purview of the Constitution. Judge Jones, near the end of the opinion, at Page 23, said:

"We see no distinction in principle between the use of a fact-finding body for determining whether or not 'unusual hardships' have resulted in specific cases and the use of a similar administrative agency to ascertain the fact whether a picture film is of a moral, educational, or harmless character. Manifestly, since unusual hardships would affect some and not other owners in a zoning district, the determination whether the restriction imposes unusual hardships upon an individual's property must be left, in specific instances, to the discretion of administrative agencies, but even so the power conferred upon them cannot be unreasonably or arbitrarily exercised."

The Board had, upon hearing, permitted a variance from a required thirty-foot setback as it appeared in the ordinance. The Court of Appeals affirmed the action of the Board, and the Supreme Court affirmed the judgment of the Court of Appeals.

**Smith v. Volk, 85 Oh Ap 347,** with which the writer of this opinion is familiar, has nothing in common with the instant case. There, the owner who was charged with the knowledge that he was restricted to "single houses to be used for residence and dwelling purposes" had an old barn worth $1,000.00 to $3,000.00 on the premises. He spent $12,000.00 in converting the barn into a night club. The principal issue was not as to the effect of the restriction but if it was binding on the defendant.

The restriction in Stewart v. Barber, 43 N. Y. Supp. 2d 560, included "occupation" in addition to "manufacture, business and trade." Tomko v. Vissers, 121 A. 2d 502, 21 N. J. 226, holds that it is the primary responsibility of applicant for zoning variance to supply competent and credible evidence to apprise Board of Adjustment of the nature and degree of zoning burden sought to be alleviated through the **variance** procedure. The Supreme Court of New Jersey based its decision on the finding that the granting of the application for the zoning variance was fatally defective "because conclusions reached by the Board were not founded on the evidence." The variance sought was the right to construct a swimming pool, a business venture, in clear violation of a restrictive section of a zoning ordinance. The record did not show an application for a building permit. The sole presentation of the applicant before the Board was a "lay-out map" and an "artist's sketch." Nothing was forthcoming which related to the advisability of granting a variance.

Beirn, et ux. v. Morris et al., 14 N. J. 529, 103 A. 2d 361, developed that land owners, who took their property with full knowledge of the restrictions and with the purpose to violate them by engaging in a business venture on the restricted land, did not establish a ground for variance.

Nutini, et al. v. Zoning Board of Review, etc. 82 A. 2d 883, was a variance case wherein ample facts were found to support the order granting the variance.

The issue heard and decided by the Board in this case was the right of defendant to erect the proposed building within the express authorization of the Zoning Ordinance, without a waiver of any of its provisions or the invoking of the variance or hardship sections thereof. Thus, the cited cases where the right of the applicant to secure a variance from the provisions of an ordinance are helpful only inferentially. Nor was the showing of adjacent commercial uses of material aid on the question presented. These uses are to be considered here only as they may reflect on the ultimate question of whther the injunction should be granted. It is urged that the Board did not have before it evidence which afforded a basis for its action, and the cases heretofore discussed are cited in support thereof.

The Board of Zoning Adjustment consists of five members, three of whom must be chosen from an architect, building contractor, professional engineer, real estate broker or mortgage banker. Certain members of the Board who testified were lawyers. Obviously, the members were qualified to read and interpret the blueprints of the proposed building which all say were before them. They knew the number and size of the rooms in the office. They had full knowledge of the requirement essential to the issuance of a permit under the ordinance. They had the affidavit of defendant as to the nature and extent of his professional services to be carried on in the building. The opponents to the granting of the permit were given opportunity to be heard.

It is claimed that the defendant's use of the building will be for the purpose of "business" or "trade." There is not unanimity in the decisions whether the practice of the learned professions is a business

or trade. The question is not so vital as applied to the Zoning Ordinance, because of the permissive accessory uses, as it is to the deed restriction. We believe that the better-reasoned opinions require the conclusion that the occupation of a general medical practitioner practicing alone, with but one employee, is not to be classified as "business" or "trade."

The cited cases supporting defendant's contention are Briggs v. Hendricks, 197 S. W. 2d 511, and Iselin v. Flynn, 134 N. Y. Supp. 133. Supporting plaintiffs' claim are Semple v. Schwarz, 109 S. W. 633, Missouri Court of Appeals, and Osborne, et al. v. Talbet, 78 A. 2d 205, Maryland Court of Appeals. In this latter case, however, the court found that "A Chiropractor is not a 'physician' and his profession or calling is not practice of medicine." The cases of Pocono Spring Water Ice Co. v. American Ice Co., 64 A. 398, and United States v. American Tobacco Co., 164 Fed. 700, cited by defendant, are not in point.

It is confidently urged that little or no inquiry was made at the hearing before the Board of Zoning Adjustment as to the number of rooms in the office or their purpose as it affected the question of whether they came within the meaning of "accessory use" under the ordinance. With this contention we do not agree, upon the record taken at the hearing before the Board and especially because of the information available from the blueprints.

It may be agreed that the members of the Board did not, and do not, put the interpretation on the term "workrooms" which plaintiffs ascribe to it.

If it could be said that the members of the Board did not test the proposed building construction and its use from every viewpoint urged by plaintiffs, all such tests were posed to them as witnesses in this suit, and all were resolved by them in favor of their action granting the permit. It is, therefore, evident if the application again came to the Board for decision, it would hold as it formerly did.

We then must determine if the facts developed before the Board, and here, are such as to require us to say that the Board clearly abused its discretion or that, as a matter of law, the granting of the permit was based on an improper construction of the Zoning Ordinance. We cannot find either issue in favor of the plaintiffs.

We next consider the claim that the building appears to be "designed or constructed with structural appearance for use as business, trade or industry, or other use conducted for gain," which is prohibited by the ordinance. With one exception, the witnesses are unanimous in holding that the foregoing provision of the ordinance is not violated by the appearance of the proposed structure. Indeed, one witness for the plaintiff says that if the building were to be used as a residence, it would be unobjectionable.

Plaintiffs urge, with much assurance, that the office space and arrangement therein are such that it is not an "accessory use," as defined in the ordinance. The office of the defendant is to be located in the residence and, but for the exception to the "accessory use," there would be no limitation as to the size or extent of the use of that office. There are possibly four of the office rooms which may be characterized as

rooms in which the defendant would work. By the broad definition of work, "exertion of strength or faculties to accomplish something" (Webster), these four rooms may be characterized as "workrooms." Work is also defined as toil, labor. It may be that it is so employed in this ordinance.

In **The Republic Tool & Manufacturing Co. v. Lenarz, 17 Oh Ap 500,** it was held that an executive officer of a corporation was not entitled to a writ of attachment for "work" or "labor" by force of §10253 GC.

Judge Phillips, in **57 Abs 406, Kreider, et al, v. Carson,** said that services rendered by a real estate agent for professional services are not included in the definition of work and labor as used in §11819 GC. In a per curiam in **Henry v. Mangold, 50 Abs 510,** Second Appellate District, at **Page 511,** it is said:

"The law of Ohio seems to be well established that the claims for services performed by executives of a corporation or by physicians or attorneys are not claims for 'work,' but in the case at bar the record discloses that the plaintiff was in the employ of the defendant and that he performed services in his behalf as an artisan in the production of wealth and that his exertions were primarily physical and not mental."

We do not know what "workrooms," as employed in the exceptions to "accessory uses" in the ordinance, means; and it is not necessary, nor do we attempt, to fully define it. But, we are of the opinion that it is not used as a limitation on the number of rooms in which a physician may follow the general practice of medicine. To so construe it would negate the permission of a physician to office in his residence. If a doctor, living in a residence of 15 rooms, would use two of them for his office work, he would, upon the interpretation of the plaintiffs, violate the exceptions in the permitted "accessory use" of the ordinance. On the other hand, if a physician in the general practice would employ all of the space in a large dwelling as one room in which he would perform his services, and reside in one small room, he would observe the ordinance.

It reasonably appears that the defendant, in the building which he proposes to erect, is preparing to provide only sufficient rooms to meet the demands of a general medical practitioner in a modern office. It is not probable that the ordinance was intended to bar the use of such an office.

The petition also avers that the operations to be conducted in the medical office constitute a "clinic." Without comment, we hold against this claim.

Upon the proof of special damage to be suffered by plaintiffs by the erection of the proposed building, they fail completely. All of the convincing testimony is to the contrary.

There may be some possible doubt as to the construction the Board has placed upon the permitted accessory use, by subsection 2 of Section 47.04, of Ordinance No. 966-54, as it affects residence structures erected in the district since the enactment of the ordinance. Upon that question, we give weight to the judgment of the Board and are not prepared

to say that it exceeded its discretion in construing this phase of the ordinance in favor of the defendant.

We have not discussed many of the cases cited by counsel for the parties, but have read most of them. A number of them treat of factual developments not found here and are not especially helpful on the questions here presented. They disclose that counsel have practically exhausted the list of cases which could in the remotest degree affect the issue.

The Board in this case had discretion, and there is not the slightest suggestion that its action was the result of perversity of will, passion, or moral delinquency. McNeil v. McNeil et al, 46 Abs 244, or that it exercised its discretion to an end or purpose not justified by, and clearly against, reason and evidence. State v. Ferranto, 112 Oh St 667, 148 N. E. 362.

Injunction is an extraordinary remedy not to be granted unless the proof is clear and convincing, "its allowance being a matter of grace rather than of strict right, and determined by the nature of the case, the peculiar facts presented therein, the law governing the same, and by consideration of public policy and convenience." 21 O. Jur., "Injunctions," page 1006.

Independent of the narrow and determinative questions which we have considered, there are strong equities in behalf of the defendant. He did not begin construction until after he had consulted with and conformed to the requirement and advice of the administrative agencies which had the right to issue to him a building permit and had secured that permit. There have developed facts which suggest, at least, that the defendant would have a strong case for variance within the terms of the zoning ordinance. East of an alley which abuts defendant's property on the east are two gasoline stations. His building is to the west of these stations and near to them. Defendant's lot has remained unimproved for many years. The witnesses are practically in agreement that the proposed structure has the appearance of a residence and will enhance the value of the surrounding properties. The defendant already has invested a substantial sum of money. in the building. Of course, he did so at some risk because of the pendency of this suit for injunction. But the first court which heard the case held that the claim of the plaintiffs was not well made and no order preventing continuance of the building was issued.

We do not find that the Board of Zoning Adjustment in granting the building permit to defendant acted arbitrarily, illegally or abused its discretion. Nor that the facts developed in the record disclose any misconception by the Board of the proper construction of the ordinance involved in any particular challenged by the plaintiff.

The injunction will be denied, petition dismissed, and the temporary injunction heretofore granted will be dissolved.

DEEDS and FESS, JJ, concur.