WILLIAM C. KIDD, Secretary, Department of Business Development
You have called my attention to two fact situations relating to the construction of facilities for use by physicians and others providing health care. In each situation, you ask whether the proposed facility will qualify as a "clinic" under sec. 66.521 (2) (b) 7, Stats. If so qualified, in either case, the "clinic" would be a "project" subject to the industrial development revenue bond law and its construction could be financed with revenue bonds issued pursuant to that law.
It is my opinion that neither of the proposed facilities is a "clinic" for the purposes of the industrial development revenue law.
Your first fact situation is a proposed medical arts building with nine offices for medical practitioners, plus common laboratory, x-ray, minor surgery and physiotherapy facilities, and a small pharmacy. All tenants will not necessarily use all common facilities. Use of the common facilities will be chargeable at the same rate to all occupants of the building. The concept behind the common facilities is that it has become increasingly important to have such facilities within a physician's office but that the cost of maintaining such facilities for a sole practitioner or two-man partnership is prohibitive.
Significantly, there will be no "group practice" among the physicians occupying the building in the sense of any formal business affiliation which predetermines the distribution of income from medical practice. The tenants will be invited to become limited partners in the ownership and operation of the building along with the two general partners who are the physicians promoting the building. These general partners contemplate they will be tenants along with other physicians practicing in a variety of recognized specialties. Each tenant would be conducting his medical practice independently of the other tenants. Each suite of *Page 134 
offices would be separate from those of the other tenants with no common waiting rooms. Consultation among tenants on an informal basis may result from their close physical proximity to each other, but there would be no formal arrangements for consultation. Nor are any formal coverage arrangements for each other's patients contemplated in the event of vacations, hospital duty or sickness.
Your second fact situation is a contemplated local health facility consisting of a doctor's home, office, pharmacy and parking facilities. The facility would be located in an area not large enough to support more than one, or possibly two, doctors.
These fact situations do not describe projects suitable for industrial development revenue bonding.
There is no definition of the word "clinic" in the statute. It is a familiar rule of statutory construction that ordinary words be given their usual and common significance if such meaning harmonizes with the evident intent of the language employed and with the purpose to be accomplished. Van Dyke v. Milwaukee
(1915), 159 Wis. 460, 464, 146 N.W. 812. It is also possible that this particular term should be viewed as a word of art having a special meaning to professional persons.
Webster's Third New International Dictionary (1968), defines the word "clinic" as follows on page 423:
 "3a: an institution connected with a hospital or medical school where diagnosis and treatment are made available to outpatients b: a form of group practice in which several physicians (as specialists) work in cooperative association"
 Schmidt's Attorneys' Dictionary of Medicine — Volume 1
(1974), defines the word "clinic" on page C-89 as follows:
 "4. A place where patients are treated by physicians who practice medicine as a group."
That same source defines the term "group medicine" on page G-37 as follows:
 "2. The practice by a group of physicians (including various specialists) associated for the advantage of consultation, laboratory facilities, etc." *Page 135 
The Court of Appeals of Ohio held in Deibel v. Wilson (1957), 77 Ohio Law Abst. 471, 150 N.E.2d 448, 456, that a doctor engaged in the general practice of medicine but with only one employe and only that equipment ordinarily employed by a practicing physician would not be conducting a "clinic" within the meaning of an ordinance permitting the use of his residence for a doctor's office, but providing that such office should not include a clinic.
More recently in People v. Dobbs Ferry Medical Pavillion, Inc. (1973), 340 N.Y.S. 2d 108, 114, 40 A.D. 2d 324, the Appellate Division of the Supreme Court of New York, after concluding that the word "clinic" was vague and ambiguous and virtually synonymous with the term "group practice," referred with approval to the definition of "group practice" advanced by the American Medical Association as "the application of medical services by three or more full-time physicians formally organized to provide medical care, consultation, diagnosis, and/or treatment through the joint use of equipment and personnel, with the income from medical practice distributed in accordance with methods previously determined by the group."
In 62 OAG 141 (1973) my predecessor discussed the legislative intent of the Wisconsin Industrial Development Law. That opinion referred to the decision of the Wisconsin Supreme Court in Stateex rel. Hammermill Paper Co., et al. v. La Plante (1973), 58 Wis.2d 32,205 N.W.2d 784, which upheld the constitutionality of the law. At pp. 73-75 the court answered the attack upon the law where the argument was made that the legislation granted industrial enterprises privileges and benefits denied to nonindustrial enterprises, saying that it was the "industry" in this state that was being induced to move their operations, and in order to ease this economic drain upon the state, the legislature determined it was necessary to promote "industrial enterprises." Although the law was subsequently amended by Chapter 265, Laws of 1973, to include "hospital, clinic or nursing home facilities" within the meaning of the terms "project" and "industrial project," the word "clinic" should not be so broadly defined as to reach beyond the intended purpose of the law.
Whether the term "clinic" is examined in its common significance or as a word of art, its meaning includes the concept of *Page 136 
group practice for purposes of this statute. Accordingly, it is my opinion that the word "clinic" as used in sec. 66.521 (2) (b) 7, Stats., means a form of group practice providing a wide variety of medical services in which actively practicing physicians, usually specialists, work in cooperative association, formally affiliated with each other in a professional business enterprise with a predetermined arrangement for the distribution of the income from the medical practice.
BCL:APH