CHANDLER L. MCKELVEY, Secretary Department of Development
You ask whether a chiropractic clinic qualifies for industrial development bond financing under sec. 66.521(2)(b)7., Stats. The answer is yes. You also ask whether the definition of chiropractic clinic under sec. 66.521, Stats., is determined by reference to the definition promulgated by the Chiropractic Examining Board. The answer is no.
Section 66.521(2)(b)7., Stats., defines "[h]ospital, clinic or nursing home facilities" as projects which are eligible for industrial development bond financing. It is my opinion that a chiropractic clinic is encompassed within the term "clinic" as found in sec. 66.521(2)(b)7., Stats. *Page 134 
"Clinic" is a vague and ambiguous word. People v. Dobbs FerryMedical Pavillion, Inc., 40 A.D.2d 324, 340 N.Y.S. 2d 108, 112
(1973). Where ambiguity exists, resort may be made to other acts of the Legislature to determine its intent in utilizing the ambiguous term. 82 C.J.S. Statutes 365 (1953).
A review of the statutes reveals that the Legislature does not consider the word "clinic" to refer exclusively to a facility operated by physicians. As examples, sec. 446.04(5)(e), Stats., permits use of the term "clinic" in a chiropractor's office sign if the office meets the requirements of a clinic as defined by the Chiropractic Examining Board. Section 447.06(2), Stats., permits dental students to practice under direct supervision in a clinic. And sec. 50.39(3), Stats., exempts the "offices and clinics" of physicians, dentists, and chiropractors from the operation of secs. 50.32 to 50.39, Stats.
Furthermore, when the Legislature desires to restrict the operation of a statute to a particular type of clinic, it is fully capable of doing so. In sec. 141.07, Stats., counties are authorized to establish dental clinics. Section 46.21(2)(a), Stats., directs county boards of public welfare to supervise the operation of guidance clinics. Particularly instructive are secs.67.01(7) and 67.04(1)(a), Stats., which authorize municipal borrowing for medical clinics. Section 67.01(7), Stats., contains the term "medical clinic" and defines the term as "an ambulatory health care facility which is operated as part of the practice of a physician, partnership of physicians, unincorporated medical group or service group of physicians as defined in s. 180.99 and which includes the offices of such physicians." Thus, the Legislature clearly expressed its intent to restrict municipal borrowing for clinics exclusively to those operated by physicians. If the Legislature had any intent to restrict the use of industrial development bonds to physician's clinics, it could have incorporated into sec. 66.521, Stats., a definition similar to the one utilized in sec. 67.01(7), Stats.
That the Legislature intended to include chiropractic clinics is also supported by the recent legislative history of sec. 66.521(2)(b)7., Stats. Chapter 362, Laws of 1979 (1980 Special Session Senate Bill 4), made various amendments to sec. 66.521(2)(b)7., Stats. During the course of the Legislature's consideration of the bill, amendments *Page 135 
were introduced in both houses to specifically exclude chiropractor's offices from sec. 66.521(2)(b)7., Stats. The assembly amendment was rejected and the senate amendment was tabled. The failure of those amendments is an indication that the Legislature intends the term "clinic" to encompass chiropractor's clinics. See 2A C. Sands, Statutes and Statutory Construction, sec. 48.18 (4th ed. Rev. 1973) and Estate of Sauer, 216 Wis. 289,293-94, 257 N.W. 28 (1934).
It is therefore my opinion that the Legislature's use of the word "clinic" in sec. 66.521(2)(b)7., Stats., evinces an intent to include facilities operated by various health professionals, including chiropractors.
It is also my opinion that the definition of clinic under sec. 66.521(2)(b)7., Stats., cannot be determined solely by reference to section Chir 3.04 Wis. Adm. Code. That rule defines "clinic" pursuant to the directive set forth in sec. 446.04(5)(e), Stats. The purpose of that section is to prohibit misleading advertising of chiropractic services. On the other hand, promotion of industry in the state was the legislative purpose in enacting sec. 66.521, Stats. Given the differing objectives of the two statutes, reference to the Chiropractic Examining Board's rule to determine the meaning of "clinic" under sec. 66.521, Stats., is not appropriate, except for the limited purpose discussed below.
In 64 Op. Att'y Gen. 133 (1975), I discussed the meaning of the term "clinic" in view of the legislative intent of the Wisconsin Industrial Development Law. The matters discussed therein apply with equal force here. I concluded in that opinion that "clinic" means a form of group practice where practitioners "work in cooperative association, formally affiliated with each other in a professional business enterprise with a predetermined arrangement for the distribution of the income." 64 Op. Att'y Gen. at 136.
A question not resolved by my earlier opinion is the number of chiropractors that must be involved in a practice for it to be characterized as a group practice. In that opinion, I relied upon an American Medical Association definition which required the involvement of three or more physicians. Thus, with reference to chiropractors, resort to the Chiropractic Examining Board's definition relative to *Page 136 
the number of practitioners that must be involved in a clinic appears to be reasonable. Section Chir 3.04 Wis. Adm. Code requires a clinic to have at least two practitioners. I therefore conclude that in order to qualify as a clinic under sec. 66.521 (2)(b)7., Stats., a chiropractic clinic must at the minimum involve two chiropractors, and must otherwise meet the requirements set forth in 64 Op. Att'y Gen. 133 (1975).
BCL:DDS